## HANNAH W. STEVENS *v.* GRENVILLE S. STEVENS.

The statute authorizing a divorce, among other causes, for " gross misbehavior and wickedness, repugnant to and inconsistent with the marriage contract," does not justify a divorce, upon the ground, that the respondent husband has for a period brief when compared with the period required by the statute in cases of desertion, lived in the same house with, or previously been the daily companion of another woman, each avowing for the other entire affection, though no relation legally criminal has existed between them.

THIS was a petition for divorce. The case is fully stated in the opinion. It was argued for the petitioner by *Abraham Payne* upon the following brief :—

The ground upon which the divorce is claimed is single, i. e., " gross misbehavior and wickedness repugnant to and inconsistent with the marriage contract."

The specification is in substance : That the respondent and another woman have formed an attachment for each other, and communicated this fact to the petitioner. This other woman immediately proceeded thereupon to procure a divorce from her husband. See Record of petition for divorce, *Joseph B. White* v. *Lydia B. White*, Providence county, March Term, A. D. 1867.

The respondent attempted to procure a divorce from his wife, because, when she had been informed by him and the woman to whom he had transferred his affections, of this state of things, she refused to cohabit with him. See Record of petition for divorce, *Grenville S. Stevens* v. *Hannah W. Stevens*, Providence county, March Term, A. D. 1867.

I refer to these proceedings to show that the state of things now existing is of long duration, and not likely to change ; in fact, all the testimony shows this.

The respondent and this woman have carried into effect their determination to be all in all to each other, by removing from this State and living in the same house together, there openly in the presence of neighbors and the family where they live, avowing the attachment for each other. For more than a year

prior to such removal, the respondent visited the house of the woman with whom he is now living, daily, and often two or three times a day ; spending his evenings with her, and remaining sometimes nearly the whole night. I do not refer to the depositions in detail, as they are short, and they all concur in and are confined to the proof of these facts. Now, I submit, that so far as the petitioner's rights are concerned, it can make no difference that the respondent and this woman justify themselves on religious and conscientious grounds.

The question is, is this conduct of the respondent repugnant to and in violation of his marriage contract, to love and cherish the petitioner and keep only unto her ? It is not adultery, into which he might be led, and of which he might repent. It is not desertion from which he might return. It is not cruelty, which reaches the body only, and for which he might atone. It is a mental and moral alienation under circumstances which leave no rational hope of change, exhibited in conduct wholly repugnant to his marriage vow, and releasing the petitioner from hers, and entitling her under the law of this state to a decree of release from this court, as she respectfully submits. It is *her* rights that the court is called upon to vindicate.

The opinion of the court was given by DURFEE, J. The petition alleges as the ground of divorce, that the respondent has been guilty of gross misbehavior and wickedness, repugnant to and in violation of the marriage contract, and proceeds to specify in detail the particular acts upon which this allegation is based. From the evidence which was taken in support of the petition, and from what is known to the court, it appears that about two years ago, the respondent, then residing with his wife in Providence, became acquainted with a Mrs. W., who was then also a resident of the same city ; that soon an intimacy grew up between him and the said Mrs. W., of such a character that the respondent was in the habit of visiting her once, twice and even three times a day, and of spending his evenings in her company, staying, sometimes, as late as two o'clock in the morning ; that about a year ago last September, the respondent and the said Mrs. W., both informed the peti-

tioner that there had a mutual attachment or affection sprung up between them; that, from the time this was made known to the petitioner, she refused to cohabit with the respondent; that the respondent, at the March term, A. D. 1867, of this court in this county, petitioned for a divorce from the petitioner, on the ground of such refusal, which petition, though unopposed by the petitioner, except to protect her character, the court dismissed; that at the same term, the husband of the said Mrs. W. obtained a divorce from her upon the ground of her refusal to cohabit with him for many years; that the said Mrs. W. is now living in Rehoboth, Mass., with her son; and that the respondent, when the evidence was taken, was, and since early in April has been, living in the same house with her, both he and she openly to their friends avowing their affection for each other. It further appears that the respondent and the said Mrs. W., in their conduct towards each other, claim to act from a sense of religious duty or conviction; and, it is admitted by the counsel for the petitioner, that there is in their intercourse with each other nothing which is criminal in the legal sense of the word.

The petition is based upon the concluding clause of Sec. 2, Ch. 137, of the Rev. Stat., and calls for some exposition or interpretation of that clause. The entire section is as follows:—

" They (divorces) shall also be decreed for impotency, adultery, extreme cruelty, wilful desertion for five years of either of the parties, or for such desertion for a shorter period of time in the discretion of the court, for continual drunkenness, for neglect or refusal on the part of the husband, he being of sufficient ability, to provide necessaries for the subsistence of his wife; and for any other gross misbehavior and wickedness in either of the parties, repugnant to and in violation of the marriage covenant."

Where a general clause succeeds a specific enumeration, it is a familiar rule that the general clause shall be interpreted in the light of such enumeration. The causes of divorce specifically named are of two kinds—those which have instantaneous effect as causes, and those which acquire their efficiency by continuance. For instance, a single act of adultery warrants a di-

vorce, and doubtless a single exhibition of extreme cruelty might be so atrocious that the court would not wait for its repetition. But drunkenness, to warrant a divorce, must be continued; desertion must be for five years, except by dispensation from the court; and neglect to provide is construed to mean a neglect protracted through a period of greater or less duration. Of the two causes first mentioned, the moral characteristic of the one is licentiousness, of the other, brutality; the three causes subsequently named, indicate delinquencies of a more corrigible and venial type. In trying petitions which are based upon the final clause of the section, we should bear these distinctions in mind, and give more or less importance to the element of time, according as the grounds of divorce, which are alleged and proved, have more or less resemblance to the one or the other class of causes enumerated.

By pursuing further this line of inquiry, we might, without doubt, derive further aid to the interpretation of the clause in question; but the language in which it is expressed, is so apt and significant, that we prefer examining the clause itself.

Interpreting the words of the clause according to their plain import, we think it obvious that no act or series of acts can constitute a ground of divorce under the clause, unless such act or series of acts unites two distinct moral elements or qualities : that is to say—it must be of such a character as, in the first place, to amount to gross misbehavior and wickedness, and, in the second place, to be repugnant to and in violation of the marriage contract. There are consequently many kinds of gross misbehavior and wickedness which are not, under the clause, grounds of divorce. No one, for instance, would think of alleging larceny, or embezzlement, or forgery, as being in itself a sufficient ground of divorce, for the reason that neither of these offences, however wicked in itself, can strictly speaking, be said to be repugnant to and in violation of the marriage contract; though either of them might, perhaps, lead to consequences which would justify a divorce. And so, on the other hand, there are doubtless many violations of marital duty, and many modes of conduct, repugnant to and in violation of the

marriage contract, which are nevertheless not sufficient as grounds of divorce, for the reason that they do not take, in the statutory sense, the form of gross misbehavior and wickedness. The statute, under the clause which we are considering, author-izes a divorce only where there is a concurrence of both ele-ments.

Is there such concurrence in the conduct of the respondent? Unquestionably he has done many things which are repugnant to and in violation of the marriage contract. He has left the wife whom it was his duty to support and cherish, to live on terms of anomalous intimacy with a woman but recently di-vorced; he has transferred to that woman the affection which, by virtue of his marriage, was sacredly due to his wife; he openly avows for that woman an attachment which is recipro-cated by her, and claims for it the sanctions of religious con-viction; and he has manifested his alienation from his wife, not only by these acts and professions, but also by petitioning for divorce from her without being moved thereto by sufficient cause. It is evident that in the existing relation between him and his wife, there is nothing but the legal bond which entitles it to the name of marriage; and it may be said that to grant the divorce, is simply to recognize in law that which is already ex-istent in fact. But the law, as we construe it, does not encour-age the separation of those who are unhappily married by mak-ing divorce too easy to them; and, when estrangements arise between man and wife, it looks for the exercise of patience to bear, and the influence of time to reconcile and heal them, knowing that marriage is a discipline as well as a delight; and it withholds the extreme remedy of divorce until the domestic estrangement, either connects itself with some one of the spe-cific causes of divorce known to the law, or results either by in-stantaneous misdoing, or persistent derelictions of duty, in gross misbehavior and wickedness of the kind described in the statute.

Admitting, then, that the conduct of the respondent is repug-nant to and in violation of the marriage covenant, it is still our duty to inquire whether it amounts to " gross misbehavior and

wickedness," within the meaning of the statute. Bringing to this investigation the light derived from examination of the enumerated causes of divorce, we may inquire first,—if his conduct is of a kind which will warrant a divorce without regard to the time of its continuance; and (if we think not) second,— if his conduct is of a kind which is allied to the other causes, which become sufficient by reason of their continuance; and if so, whether it has been long enough continued to warrant a divorce.

*First.* In order to make the conduct of the respondent a ground of divorce, without regard to the time of its continuance, it should have some character of licentiousness or brutality, allying it in its moral attributes with adultery, or extreme cruelty, or, if different in kind, it should be similar, at least, in degree of criminality. Has his conduct been of such a character? There is no evidence whatever of brutality; and, according to the admissions of the counsel for the petitioner, there is nothing in the intercourse between the respondent and the woman with whom he resides, which is criminal in the legal sense of the word,—their intercourse being a result of conscientious feeling and belief; and the evidence discloses nothing, except, perhaps, the occasionally late hour to which he stayed with her before his separation from his wife, which amounts to what would ordinarily be termed indelicacy, or indecent familiarity in their deportment to each other. Indeed, but for the fact that the respondent is a married man, his relation to Mrs. W., in so far as it is exhibited in the evidence, however open to criticism from a social or conventional point of view, might be entirely consistent with morality. Of course we are very far from thinking that the fact that he is married, has no bearing upon the moral quality of his conduct in its relation to Mrs. W. On the contrary, as violative of his marital duty, we can speak of it only with condemnation. But, upon the evidence before us, and the admissions which have been made, we cannot say, in the view which we take of the statute, that the conduct of the respondent has been either brutal or flagitious, in such sense as to make it a ground for divorce, without regard to its duration.

*Second.* We are to inquire whether the conduct of the respondent has been of that kind which gradually ripens into a cause of divorce by continuance of delinquency, and, if so, whether it has been continued long enough to warrant a divorce in this particular case. The facts proved show a case of desertion, or of misconduct closely akin to desertion. Moreover, if it be desertion, it is desertion linked with grievous aggravations. We can readily understand that, in its peculiar circumstances, it is a source of keener trial and more consuming agony of mind to the petitioner, than would be many of the kinds of misconduct which are familiar causes of divorce. But we cannot grant her a divorce out of pity for her sufferings. We must first find that she is legally entitled to it.

We have said that this is a case of, or nearly akin to, desertion ; but considering it as desertion, it is not a desertion for the statutory period of five years. The court, it is true, have a discretion to decree divorce for a shorter desertion ; but this discretion is not an arbitrary or capricious, but a judicial discretion. We cannot abridge the period at all without reason ; we cannot abridge it so much as a divorce in this case requires, without very weighty reasons. This petition was filed on the 17th of July last. At that time the respondent had lived apart from the petitioner, and with Mrs. W., less than four months, and, down to the present time, the separation is short of a year. Of course, we ought not, and do not, overlook the previous intimacy between the respondent and Mrs. W., in considering the sufficiency of so short a separation as a ground of divorce. But can we, taking the statute rule in regard to desertion, as a guide, grant the divorce at present? Ought we not still to wait for a possible reaction of the affections which once united the parties? The heart has its ebb and flow, and violent attachments, especially if they be strange as well as violent, are liable to sudden revulsions. Can we say of these parties, in the absence of any moral impediments to their reunion, that there is no hope that they will again be reconciled? We do not feel that we can answer these questions favorably for the petitioner, or that, acting in the spirit of the statute, we can grant her petition.

We deem it our duty, however hard it may seem in particular cases, to keep fairly up to the requirement of the law, and not unnecessarily make any precedent which shall have a tendency to encourage the growing disposition of men to regard the institution of marriage as less sacred than their own idiosyncracies.

We therefore dismiss the petition.